Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                    1:20-cv-05558

| | |
|---|---|
| Rossy Gavilanes, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Complaint |
| Gerber Products Company, | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.      Gerber Products Company ("defendant") manufactures, distributes, markets, labels and sells Gerber Good Start Grow Stage 3, a milk-based powder purporting to meet, and be necessary for, the nutritional needs of children between 12 and 24 months ("Toddler Drink, Milk Based Powder," or "Product").

2.      Feeding infants and toddlers, including the transition from only breastfeeding or infant formula with iron to the regular family diet is "critical for establishing healthy dietary preferences and preventing obesity in children."[1]

3.      The American Academy of Pediatrics (AAP) recommends "exclusive breastfeeding for the first 6 months of life with the addition of complementary foods and the continuation of

---

[1] Jennifer L. Harris, and Jennifer L. Pomeranz, "Infant formula and toddler milk marketing: opportunities to address harmful practices and improve young children's diets." Nutrition Reviews (2020).

breastfeeding until at least 12 months of age."[2]

21     After 12 months, experts recommend whole plain cow's milk, water and healthy foods as part of balanced diet.

22     Infant formula is defined as "a food which purports to be or is represented for special dietary use for infants [0-12 months] by reason of its simulation of human milk or its suitability as a complete or partial substitute for human milk." 21 C.F.R. § 106.3.

4.     Since 2003, rates of breastfeeding have increased significantly, resulting in a decrease in sales of infant formula.

5.     To make up for declining sales of infant formulas, companies have introduced products marketed as "transition formulas," "follow-on formulas," "weaning formulas," "toddler milks" and "growing-up milks" ("GUMs") (collectively, "Transition Formulas") to children older than twelve (12) months but less than 3 years old.[3]

6.     U.S. Nielsen data shows that advertising spending on transition formula quadrupled between 2003 and 2015, with sales increasing almost threefold during this period.

7.     These products are practically identical to infant formula in that they are based on milk powder with added nutrients.

8.     Transition formulas use a statement of identity that uses the words infant and toddler interchangeably, even though the two groups have different dietary needs.

9.     For instance, Defendant's infant formula product is identified as "Infant Formula with Iron, Milk Based Powder" ("Infant Formula Product").

---

[2] Jennifer L. Pomeranz, Maria J. Romo Palafox, and Jennifer L. Harris. "Toddler drinks, formulas, and milks: Labeling practices and policy implications." Preventive medicine 109 (2018): 11-16 (citing American Academy of Pediatrics (AAP) Committee on Nutrition and World Health Organization (WHO) findings).
[3] *Id.*



10.    Defendant's Good Start is named "Toddler Drink, Milk Based Powder."



11.     The name "Toddler Drink, Milk Based Powder" is deceptive and misleading because it is confusingly similar to the name of "Infant Formula with Iron, Milk Based Powder."

<table>
<tr><td align="center">Infant Formula Product</td><td align="center">"Transition Formula" Product</td></tr>
<tr><td></td><td></td></tr>
</table>

12.     "Toddler Drink, Milk Based Powder" does not state what it is in a way that distinguishes it from different foods such as the Infant Formula Product. 21 C.F.R. § 102.5(a).

13.     The absence of the term "Iron" from the Product's statement of identity is insufficient to distinguish the Product because the front panel prominently discloses "DHA & Iron."

14.     The Transition Formula Product has similar statements and labeling design to Defendant's Infant Formula Product.

| Infant Formula with Iron | Toddler Drink |
|---|---|
| Milk Based Powder | Milk Based Powder |
| 0 – 12 Months | 12 – 24 Months |
| For complete nutrition & advanced comfort | Tailored nutrition for toddlers |
| Everyday Probiotics; Digestive Health & immune support | Everyday Probiotics; Digestive Health & immune support |
| Brain & eye development; DHA | Brain development; DHA & Iron |
|  | Strong bones & teeth; Calcium & Vitamin D |
| Easy to digest – Comfort Proteins |  |
| 2' – FL; HMO Immune Support | 2' – FL; HMO Immune Support |

15.     The labeling of the Gerber Good Start Transition Formula and Gerber Infant Formula gives caregivers of young children the false impression that the former is nutritionally appropriate for children of the targeted age group – between twelve and twenty-four months – and implies that infants and young toddlers have identical nutrient requirements.

16.     Contrary to the recommended nutritional needs of children in this age range, the Product contains 15 grams of added sugar.[4]

**Nutrition Facts**

About 24 servings per container

Serving size — 3 scoops (28g)
Makes approx. 7 fl oz (200 mL)

Amount per serving
**Calories** — **130**

| | % Daily Value† |
|---|---|
| **Total Fat** 5g | 13% |
| Saturated Fat 1g | 10% |
| *Trans* Fat 0g | |
| **Cholesterol** Less than 5mg | 2% |
| **Sodium** 50mg | 3% |
| **Total Carbohydrate** 17g | 11% |
| Dietary Fiber 0g | 0% |
| Total Sugars 16g | |
| Includes 15g Added Sugars | 60% |
| **Protein** 4g | 31% |

17.     This is shown in the Ingredient List, as "Corn Maltodextrin" (a version of corny syrup) and "Sugar," both added sugars.

---

[4] Maria J Romo-Palafox and JL Pomeranz et al., "Infant formula and toddler milk marketing and caregiver's provision to young children," Journal of Maternal and Child Nutrition, vol. 16,3 (2020): e12962. doi:10.1111/mcn.12962

**INGREDIENTS:** NONFAT DRY MILK, LACTOSE, VEGETABLE OILS (HIGH-OLEIC SAFFLOWER, SOY, PALM OLEIN, AND COCONUT), AND LESS THAN 2% OF: POTASSIUM PHOSPHATE, CALCIUM PHOSPHATE, SOY LECITHIN, CALCIUM CITRATE, POTASSIUM CITRATE, MAGNESIUM PHOSPHATE, CALCIUM CHLORIDE, 2'-O-FUCOSYLLACTOSE*, CHOLINE BITARTRATE, *M. ALPINA* OIL**, *C. COHNII* OIL***, SODIUM ASCORBATE, *B. LACTIS* CULTURES, MIXED TOCOPHEROLS, ASCORBYL PALMITATE, ALPHA-TOCOPHERYL ACETATE, ZINC SULFATE, NIACINAMIDE, CALCIUM PANTOTHENATE, RIBOFLAVIN, PYRIDOXINE HYDROCHLORIDE, VITAMIN A ACETATE, THIAMINE MONONITRATE, MANGANESE SULFATE, FOLIC ACID, BIOTIN, VITAMIN D3.

**INGREDIENTS:** NONFAT DRY MILK, CORN MALTODEXTRIN, VEGETABLE OILS (HIGH-OLEIC SAFFLOWER, SOY, PALM OLEIN, AND COCONUT), SUGAR, AND LESS THAN 2% OF: POTASSIUM PHOSPHATE, CALCIUM PHOSPHATE, SOY LECITHIN, CALCIUM CITRATE, POTASSIUM CITRATE, CALCIUM CHLORIDE, MAGNESIUM PHOSPHATE, CHOLINE BITARTRATE, M. ALPINA OIL*, C. COHNII OIL**, SODIUM ASCORBATE, FERROUS SULFATE, B. LACTIS CULTURES, MIXED TOCOPHEROLS, ASCORBYL PALMITATE, ALPHA-TOCOPHERYL ACETATE, ZINC SULFATE, NIACINAMIDE, CALCIUM PANTOTHENATE, RIBOFLAVIN, PYRIDOXINE HYDROCHLORIDE, VITAMIN A ACETATE, THIAMINE MONONITRATE, MANGANESE SULFATE, FOLIC ACID, BIOTIN, VITAMIN D3.

18.   Compared to whole cow's milk, recommended by global health authorities, the Gerber Good Start Grow Stage 3 contains less protein, sugar (carbohydrates) and fat.[5]

**Nutritional Composition for 8 fl. oz.**

| Nutrient | Unit | Whole Cow's Milk | Gerber Good Start Grow Stage 3 |
|---|---|---|---|
| Energy | cal | 149 | 149 |
| Protein | g | 7.69 | 4.57 |
| Total Fat | g | 7.98 | 5.71 |
| Carbohydrate | g | 12.8 | 18.3 |

---

[5] Consensus Statement, Healthy Beverage Consumption in Early Childhood: Recommendations from Key National Health and Nutrition Organizations, Robert Wood Johnson Foundation, Healthy Eating Research, Sept. 2019, Appendix D.

19.    Public health research has shown that use of transition formulas such as Gerber Good Start Grow Stage 3  results in prolonged use of expensive, re-branded, infant formula instead of actually transitioning infants to cow's milk, water and other healthy foods.

20.    The similar labeling of the Gerber Good Start Grow Stage 3 and the Gerber Infant Formula Product causes caregivers to make inaccurate and ill-advised nutritional purchasing decisions.

21.    For instance, a recent study of caregivers' understanding of transition formula labeling, like the Product here, concluded that 52% expected these products to "give toddlers nutrition that they wouldn't get from other sources."[6]

22.    70% of persons surveyed believed transition formulas like Gerber Good Start Grow Stage 3 is a suitable drink for toddlers, despite expert recommendations that they offer "no unique nutritional value beyond what could be achieved through a nutritionally adequate diet; furthermore, they contribute added sugars to the diet."[7]

23.    According to the Consensus Statement, Healthy Beverage Consumption in Early Childhood: Recommendations from Key National Health and Nutrition Organizations, published by the Robert Wood Johnson Foundation, Division of Healthy Eating Research in September 2019, the cost for Gerber Good Start Grow Stage 3 is close to four times more expensive than whole cow's milk, the recommended alternative and a nutritionally superior choice.[8]

---

[6] Maria J Romo-Palafox and JL Pomeranz et al., Marketing claims on infant formula and toddler milk packages: What do caregivers think they mean?  , UCONN Rudd Center for Food Policy & Obesity, September 2019.
[7] Id.
[8] Consensus Statement, Healthy Beverage Consumption in Early Childhood: Recommendations from Key National Health and Nutrition Organizations, Robert Wood Johnson Foundation, Healthy Eating Research, Sept. 2019.

| Price | Cow's (whole) | Gerber Good Start Grow Stage 3 |
|---|---|---|
| Price ($/100 g) | 0.15 | 0.59 |
| Price ($/8 fl oz) | 0.29 | 1.17 |
| Price ($/gallon) | 4.68 | 18.76 |

24.    Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

25.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

26.    The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

27.    Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

28.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $ 17.48 per 680 grams, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

29.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

30.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal

diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

31.   Plaintiff Rossy Gavilanes is a citizen of New York.

32.   Defendant Gerber Products Company, is a Michigan corporation with a principal place of business in Arlington, Arlington County, Virginia and is a citizen of Virginia.

33.   "Minimal diversity" exists because plaintiff Rossy Gavilanes and defendant are citizens of different states.

34.   Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

35.   Venue is proper in this judicial district because defendant is an entity with the capacity to sue and be sued in its common name under applicable law and is deemed to reside in this judicial district because defendant is subject to the court's personal jurisdiction in this State with respect to this action. *See* 28 U.S.C. § 1391(b)(1); *see also* 28 U.S.C. § 1391(c)(2).

36.   Venue is further supported because many class members reside in this District.

### Parties

37.   Plaintiff Rossy Gavilanes is a citizen of New York, Flushing, Queens County.

38.   Defendant Gerber Products Company is a Michigan corporation with a principal place of business in Arlington, Virginia, Arlington County and is a citizen of Virginia.

39.   During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

40.   Plaintiff purchased the Product on one or more occasions, including in or around August 2020, through Amazon.com and/or other locations.

41.   Plaintiff bought the Product at or exceeding the above-referenced price because she

liked the product for its intended use for those children in the applicable age-range to whom she was a caregiver, and believed the Product was necessary and/or valuable to the nutritional needs of said children.

42. Plaintiff was deceived by and relied upon the Product's deceptive labeling.

43. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

44. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

45. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

46. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

47. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

48. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

49. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

50. Plaintiff is an adequate representatives because her interests do not conflict with other members.

51. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

52.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

53.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

54.     Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

55.     Plaintiff incorporates by reference all preceding paragraphs.

56.     Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

57.     Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

58.     Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

59.     Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

60.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

61.     Plaintiff incorporates by reference all preceding paragraphs.

62.     Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

63.     Defendant had a duty to disclose the truth about the Product and its nutrition

11

usefulness, or lack thereof.

64.     This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

65.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

66.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

67.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

68.     Plaintiff incorporates by reference all preceding paragraphs.

69.     The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, organoleptic, and/or compositional attributes it did not.

70.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

71.     This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

72.     Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

73.     Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding

the Product, of the type described here.

74.   The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

75.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

76.   Plaintiff incorporates by reference all preceding paragraphs.

77.   Defendant misrepresented the substantive, quality, compositional and/or organoleptic attributes of the Product.

78.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

79.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Unjust Enrichment

80.   Plaintiff incorporates by reference all preceding paragraphs.

81.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

   1. Declaring this a proper class action, certifying plaintiff as representative and the

13

undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the

   challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and

   representations, and restitution and disgorgement for members of the class pursuant to the

   applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory

   claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and

   experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   November 15, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-05558
United States District Court
Eastern District of New York

Rossy Gavilanes, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Gerber Products Company,

Defendant

Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 15, 2020

/s/ Spencer Sheehan
Spencer Sheehan