UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
ROSSY GAVILANES, individually and
on behalf of all others similarly situated,

                Plaintiff,

    -against-

GERBER PRODUCTS COMPANY,

                Defendant.
-------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:20-cv-05558

*Appearances:*
*For the Plaintiff*:
SPENCER SHEEHAN
Sheehan & Associates, P.C.
60 Cuttermill Rd., Suite 409
Great Neck, NY 11021-3104

*For the Defendant*:
BRYAN A. MERRYMAN (*pro hac vice*)
DEEMA ABINI (*pro hac vice*)
White & Case LLP
555 South Flower Street, Suite 2700
Los Angeles, CA 90071

SEQUOIA KAUL
PAULA KATES
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020

**BLOCK, Senior District Judge:**

    Defendant Gerber Products Company ("Gerber") moves to dismiss the First

Amended Complaint of Plaintiff Rossy Gavilanes ("Gavilanes") for lack of subject

matter jurisdiction, pursuant to FRCP 12(b)(1), and failure to state a claim, pursuant

to FRCP 12(b)(6). For the following reasons, Defendant's motion is granted in part

and denied in part.[1]

## I.

Plaintiff Gavilanes is a Queens resident who purchased Gerber's Good Start Grow Toddler Drink from Amazon, because she "wanted a food which was nutritionally adequate" for a toddler in her care. Complaint at ¶¶71, 74, 75. Defendant Gerber manufactures, markets, and sells Gerber Good Start Grow (the "Product"), a milk-based powder supplemented with iron.

Plaintiff alleges as follows: The American Academy of Pediatrics (AAP) recommends "exclusive breastfeeding for the first 6 months of life with the addition of complementary foods and the continuation of breastfeeding until at least 12 months of age." Compl. at ¶2. While breastfeeding is recommended, infant formula with added iron ("infant formula") is an accepted alternative when breastfeeding is not an option. *Id.* at ¶¶2-3. Pediatric health organizations, including committees from the AAP and the World Health Organization ("WHO"), have advised that after 12 months, "children's nutritional needs should be met with whole cow's milk, water and healthy foods as part of a balanced diet." *Id.* at ¶7. Experts "universally oppose consumption of added sugars by children between 12 and 24 months." *Id.* at ¶21. "Follow-up" or "transition" formulas are not recommended. *Id.* at ¶8.

---

[1] This Court has diversity jurisdiction pursuant to 28 U.SC. §1332(a). Plaintiff also alleges jurisdiction pursuant to the Class Action Fairness Act of 2005. *Id.* at §1332(d)(2). Plaintiff has not yet sought class certification.

The Product is such a "transition formula"—a milk-based formula with added iron, marketed for children aged 12 to 24 months. *Id.* at ¶5. The Infant Nutrition Council of America, a trade group that includes Gerber, states that transition formulas "can be used to fill nutrition gaps beyond 12 months." *Id.* at ¶6. However, the Product contains 15 grams of added sugar, identified as "corn maltodextrin" and "sugar," contrary to health recommendations. *Id.* at ¶¶22-23. Good Start GentlePro, Gerber's formula for children aged 0 to 12 months, does not appear to contain added sugars, but is otherwise identical to the Product. *Id.* at ¶23. Both products are identified as "milk-based powder." *Id.* at ¶15. Compared to whole cow's milk, the recommended beverage for a toddler's balanced diet, the Product contains "less protein, equivalent calories, and almost fifty percent more carbohydrates (sugars)." *Id.* at ¶25. The Product costs $17.48 per 680 grams, and whole milk costs $3.85 per gallon in May 2020. *Id.* at ¶¶26-27. The Product is almost four times the cost of whole milk. *Id.* at ¶28.

The Product is marketed similarly to another Gerber product, Good Start GentlePro Infant Formula, through "common labeling formats, images, design, type, size, fonts, call-outs and graphics." *Id.* at ¶13. The label information is also nearly identical. Gentle Pro advertises: "0-12 months," "for complete nutrition & advanced comfort," "everyday probiotics," "digestive health & immune support," "brain & eye development," "DHA, easy to digest – comfort proteins," "2'-FL, HMO Immune

Support." *Id.* at ¶18. The Product advertises: "12-24 months," "tailored nutrition for toddlers," "everyday probiotics," "digestive health & immune support," "brain development, DHA & Iron," "strong bones &teeth, calcium & vitamin D," "2'-FL, HMO Immune Support." *Id.* These similar labels trick caregivers into purchasing food that is not nutritionally sound and that is in contravention of global recommendations. *Id.* at ¶15. The labeling implies both that the Product is the "next step" in the Good Start nutritional program, and that the Product is specifically designed for toddlers' nutritional needs, though that is not the case. *Id.* at ¶¶17, 19-20. The Product does not indicate that "foods…with added sugars are inconsistent and contrary to their nutritional needs." *Id.* at ¶24.

The Product's label also pictures a seal that certifies it is "not made with genetically engineered ingredients," which intentionally mimics the seal of the independent organization, the Non-GMO Project. *Id.* at ¶44. The Non-GMO Project's Product Verification Program is widely recognized and verifies products as not being derived from GMO crops or from animals fed GMO crops. *Id.* at ¶¶47-48. The Product, however, has not been verified by the Non-GMO Project—and could not be—because its dairy ingredients are derived from cows fed GMO grains. *Id.* at ¶¶55, 57. Therefore, the Product's Non-GMO label misleads the consumer about the origins of the ingredients. *Id.* at ¶¶54-60.

Plaintiff was surprised to find that the contents of the Product are not

recommended by global health organizations, and concluded that the Product was worth less than what she and other consumers had paid for it. *Id.* at ¶¶76-77. The labeling causes caregivers "to make inaccurate and ill-advised nutritional purchasing decisions." *Id.* at ¶29. According to a study of caregivers' understanding of transition formulas, confusion of this sort is not uncommon. Fifty-two percent of the participants expected the products to "give toddlers nutrition that they wouldn't get from other sources," and 70% thought the drink was suitable for toddlers. *Id.* at ¶ ¶30, 32. Absent Gerber's labeling statements and omissions, she would not have paid the price premium. *Id.* at ¶78. Plaintiff "intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations about its adequacy, components and ingredients are consistent with its representations." *Id.* at ¶79.

Plaintiff asserts claims for the violation of the New York State General Business Law §§349 and 350, breach of express warranty, breach of implied warranty of merchantability, and violation of Magnuson Moss Warranty Act, as well as negligent misrepresentation, fraud, and unjust enrichment. Compl. at ¶¶89-110.

## II.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "A

plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* at 113. When resolving a 12(b)(1) motion to dismiss, the court "can refer to evidence outside the pleadings." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019) (citing *Luckett v. Bure*, 290 F.3d 493, 496–97 (2d Cir. 2002)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The pleading must offer more than "bare assertions," "conclusory" allegations, or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S.at 678.

A complaint includes "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that…are 'integral' to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). "[A] court may consider matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession

or of which plaintiffs had knowledge and relied on in bringing suit."[2] *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech.*, 742 F.3d 42, 45 n.1 (2d Cir. 2014) (internal citations and quotations omitted).

Where, like here, a party moves for dismissal under Rules 12(b)(1) and 12(b)(6), "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot." *Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### III.

Defendant seeks a stay or dismissal of Plaintiff's claims pursuant to the primary jurisdiction doctrine. Def. Br. at 23-24. Defendant argues that Plaintiff has conceded this argument by failing to address it in their opposition. Def. Reply at 10. However, though the court *may* deem a defense waived in such a situation, *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019), the Court declines to do so here, because the primary jurisdiction doctrine is not appropriately invoked.

Primary jurisdiction is a "discretionary doctrine . . . used to fix forum priority when the courts and an administrative agency have concurrent jurisdiction over an issue." *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 546–47 (E.D.N.Y. 2018) (citing *Mrs. W. v. Tirozzi*, 832 F.2d 748, 758–59 (2d Cir. 1987)). The Second

---

[2] The Court grants Defendant's Request for Judicial Notice. ECF 17-2.

Circuit applies four factors when determining whether to defer to an agency:

> "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made."

*Id.* (citing *Ellis v. Tribune TV Co.*, 443 F.3d 71, 82–83 (2d Cir. 2006)). "The doctrine only applies in a 'relatively narrow' set of circumstances" *Id.* (citing *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988)). "Courts seldom defer to an administrative agency where the issue is 'legal in nature and lies within the traditional realm of judicial competence.'" *Id.* (citing *Tirozzi*, 832 F.2d at 759). "Courts must also consider 'the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings.'" *Id.*

<u>Technical or Policy Considerations Within the Agency's Expertise</u>

This factor weighs against invoking primary jurisdiction. "Courts have routinely held that cases involving the mislabeling of food products are 'far less about science than [they are] about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in [these] case[s] depend[ ] is one to which courts are eminently well suited, even well versed' to handle." *In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464 (S.D.N.Y. 2018)

(citing *In re Frito–Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013)). This is such a case.

Question within the Agency's Discretion

This factor weighs in favor of invoking primary jurisdiction. Undoubtedly, the FDA has discretion in this area. Its mission includes "ensuring that foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393 (b)(1)-(2). In addition, infant formulas—though not transition formulas—have their own set of regulatory requirements. *See* 21 C.F.R. §107; *see generally id.* §101, 102.5. However, that regulations already exist weighs against invoking primary jurisdiction. *See Bautista v. CytoSport, Inc.*, 223 F. Supp. 3d 182, 189 (S.D.N.Y. 2016) (when "FDA policy is clearly established with respect to what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the FDA's expertise.").

Existence of a Substantial Danger of Inconsistent Rulings

This factor weighs against invoking primary jurisdiction. "[T]he danger of inconsistency on which the Court focuses is the danger that the FDA may issue guidance that conflicts with the Court's ruling" in the same matter. *de Lacour v. Colgate-Palmolive Co.*, No. 16-CV-8364 (RA), 2017 WL 6550690, at *3 (S.D.N.Y. Dec. 22, 2017); *see also Ellis*, 443 F.3d at 88; *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 477 (S.D.N.Y. 2014).

9

There is not substantial danger of inconsistent rulings. First, this matter, as explained below, is not before the FDA. Second, there is no concern about conflict within the same matter because any existing petitions to the FDA ask to "consider[] whether to publish a generally applicable rule rather than adjudicate a specific issue between the parties." *Colgate-Palmolive Co.*, 2017 WL 6550690, at *3.

Prior Application to the Agency

This factor weighs against invoking primary jurisdiction. *See Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 325 (S.D.N.Y. 2017) (invoking primary jurisdiction where the FTC was already considering the disputed scientific claims) *and Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 79 (E.D.N.Y. 2015) (same). Defendant repeatedly states that an application is pending before the FDA that necessitates stay or dismissal,[3] but neither party has filed an application or petition. Rather, the application to which Defendant refers is a submission by the Public Health Advocacy Institute ("PHAI") asking the FDA to enforce existing regulations against transition formulas and to amend its regulation to expressly prohibit certain labeling on transition formulas. RJN 9 at 3. However, the FDA has made no promise or indication that it will take *any* action. RJN 10. Indeed, its

---

[3] Defendant seeks a stay "in deference to a pending FDA review" and "in light of FDA's current assessment of whether additional regulation directly applied to the Product is warranted," Def. Br. at 24, and argues that Plaintiff "concedes [that] FDA's pending review of *her* claims warrants" dismissal. Def. Reply at 10 (emphasis added).

January 25, 2021 response indicates that the submission has not yet been reviewed.[4] *Id.* Further, if the FDA were to adopt petitioner's suggestions, it would, as in *Colgate-Palmolive Co.*, promulgate a generally applicable rule and not adjudicate a specific issue between the parties. 2017 WL 6550690, at *3.

For these reasons, as in similar cases, the Court declines to apply the primary jurisdiction doctrine. *See Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 53 (E.D.N.Y. 2017) (declining to apply the doctrine where "only the fact that the FDA has discretion to regulate the Infant Formula weighs in favor of applying the primary jurisdiction doctrine…. [T]his factor alone is insufficient to support such an outcome.").

## IV.

Defendant argues that Plaintiff's request for injunctive relief should be denied for lack of standing, as Plaintiff has not sufficiently pled a "real or immediate threat" of future injury. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); Def. Br. at 6. Plaintiff alleges an injury because she "is unable to rely on the Product's label in the future, which causes her to avoid purchasing the Product even though she would like to." Pl. Opp. at 21; *see also* Compl. at ¶79. Here, the Court agrees

---

[4] The FDA "advises [PHAI] that we have not been able to reach a decision on your petition within the first 180 days of its receipt because of other agency priorities and the limited availability of resources. We will complete our review of your petition and consider any amendments to our regulations as warranted and in the context of other program priorities…" RJN 10.

with Defendant.

"Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia*, 834 F.3d at 239 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111–12 (1983)). "Neither 'allegations of *possible* future injury,' nor 'past exposure to illegal conduct' is sufficient." *Lugones v. Pete and Gerry's Organic, LLC*, 440 F.Supp.3d 226, 238–39 (S.D.N.Y. 2020) (emphasis in original) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, (2013); *Lyons*, 461 U.S. at 102). "There is no exception to demonstrating future injury when the plaintiff is pursuing a class action." *Buonasera v. Honest Company, Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)). Rather, the "named plaintiffs must have standing in order to seek injunctive relief on behalf of the class." *Id.* "Alleging that one would purchase a product if re-engineered or re-marketed does not show a real or immediate threat of future injury." *See, e.g.*, *Lugones*, 440 F.Supp.3d at 238–39 (no standing where plaintiffs alleged that they would not purchase eggs unless defendant "change[d] its practices to mirror its advertising").

This presents a Catch-22 for plaintiffs, as recognition of deception in advertising precludes injunctive relief. And at least one Eastern District court has found that the "inability to rely on the labels in the future…constitutes a future harm," *Belfiore*, 94 F. Supp. 3d at 444–45 (holding that state consumer protection

statutes are undermined where injunctive relief is denied in deceptive practices cases). However, that decision is an outlier. *See Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018). Therefore, the Court must deny Plaintiff's request for injunctive relief.

## V.

Defendant moves to dismiss all of Plaintiff's claims, pursuant to Rule 12(b)(6). This Court grants Defendant's motion as to the Magnuson Moss Warranty Act violation, and denies the motion as to the rest.

### a. New York State Consumer Deception Claim NY GBL §349-350

Sections 349 and 350 of the New York General Business Law are both aimed at conduct that is deceptive—*i.e.*, "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). To state a claim under either Section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)).

Defendant argues that the Product's label is not materially misleading to a reasonable consumer and that Plaintiff does not identify an affirmative

misrepresentation. Def. Br. at 9-10. New York uses an objective test for "misleading" conduct: the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300 (internal citations omitted). The reasonable consumer inquiry can be determined as a matter of law or fact. *See Oswego*, 85 N.Y.2d 20 at 26 (the objective test for deception "may be determined as a matter of law or fact (as individual cases require)."). Thus, alleging an affirmative misrepresentation is not required. Plaintiff does allege that the label, as a whole, deceives the consumer: It purports to be the next step in Gerber's formula product line and to be a healthful substitute for toddler's nutritional needs. However, the Product is not meant to replace meals (as infant formula does) and is not tailored to toddler's need. In fact, it is nearly identical to the infant formula, except for added sugars. *See* Pl. Opp. at 6-17.[5] In addition, Plaintiff has included research showing that consumers have actually been confused by the labeling on transition formulas. Compl. at ¶¶29-32.

Defendant also argues that Plaintiff failed to allege an actual injury, Def. Br. at 17, which "typically requires a plaintiff to 'allege that, on account of a materially

---

[5] Defendant's claim of preemption re non-GMO standard is not persuasive. Def. Br. at 16. Plaintiff does not allege that Defendant's Product must meet a more rigid standard than the FDA regarding its non-GMO processes. Def. Br. at 13-16. Rather, Plaintiff alleges that Defendant's non-GMO seal is misleadingly similar to that of a non-profit that does, in fact, have stricter standards regarding GMO-free products than the FDA. Whether the logos are confusingly similar, however, is a fact question for a jury. *See Barton v. Pret A Manger (USA) Ltd.*, No. 1:20-CV-04815 GHW, 2021 WL 1664319, at *10 (S.D.N.Y. Apr. 27, 2021); *Buonasera v.* 208 F. Supp. 3d at 566.

14

misleading practice, she purchased a product and did not receive the full value of her purchase.'" *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 195 (E.D.N.Y. 2018) (quoting *Izquierdo v. Mondelez Int'l Inc.*, No. 16 Civ. 4697 (CM), 2016 WL 6459832, at *7 (S.D.N.Y. Oct. 26, 2016)). "This prong may be satisfied…'by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations.' *Greene*, 262 F. Supp. 3d at 68 (citing *Ackerman v. Coca–Cola Co.*, No. 09-CV-0395, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010)); *see also Orlander*, 802 F.3d at 302. Plaintiff has made such an allegation. Compl. at ¶64; Pl. Opp at 18.

Defendant's cited cases are inapposite. Def. Br. at 18. Plaintiff need not make specific allegations such as stating she saw the ad before purchase, as in *Goldemberg,* 8 F. Supp. 3d at 477 (plaintiff must allege seeing the ad before purchase, where a Facebook ad was alleged to be deceptive), or the date and time of the purchase. *See Colella v. Atkins Nutritionals, Inc.* 348 F.Supp.3d 120, 143 (E.D.N.Y. 2018).

For the above reasons, the Court denies Defendant's motion to dismiss Plaintiff's deceptive practice claims.

### b. Warranty Claims

#### i.  Implied warranty

Defendant argues that Plaintiff has not properly alleged that the Product is not

"fit for human consumption." *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 JG RML, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015). Def. Br. at 22. In New York, warranty of fitness and of merchantable are two different claims. *Hohn v. S. Shore Serv., Inc.*, 141 A.D.2d 504, 529 N.Y.S.2d 129, 130 (1988) ("A distributor impliedly warrants that foods sold by description are fit for human consumption *and* merchantable" (emphasis added)) (citing U.C.C. §2-314):

> "Where an item of food or drink intended for human consumption is sold, an implied warranty is imposed on the manufacturer that the item is fit for human consumption and free from any harmful or unwholesome substances, when it leaves the manufacturer's control. (cites omitted). In order to recover…the injured consumer must prove that the product was actually defective *or* unwholesome.*"*

*Vamos v. Coca-Cola Bottling Co. of New York*, 165 Misc. 2d 388, 390, 627 N.Y.S.2d 265, 268 (Civ. Ct. 1995) (emphasis added).[6] Pl. Br. at 20. Defendant is correct that Plaintiff has not alleged a breach of the warranty of fitness. Instead, Plaintiff alleges a breach of the warranty of merchantability—that the Product is not "capable of passing without objection in the trade." Pl. Br. at 20; *Jackson v. Eddy's LI RV Ctr., Inc.* 845 F.Supp.2d 523, 527 (E.D.N.Y. 2012) (citing U.C.C. §2-314).

---

[6] *See also Ryan v. Progressive Grocery Stores*, 255 N.Y. 388, 393, 175 N.E. 105, 106 (1931) ("For even were the trial court in error as to the existence of an implied warranty that the goods in question were fit for human consumption, . . . there was a warranty that they were of merchantable quality. If condensed milk is unfit for consumption, clearly it does not comply with this warranty.") *and Simchick v. I. M. Young & Co.*, 47 A.D.2d 549, 551, 363 N.Y.S.2d 619, 623 (1975), *aff'd*, 38 N.Y.2d 921, 346 N.E.2d 818 (1976) ("There are times when a warranty of fitness has no relation to a warranty of merchantable quality. . . . There are times, on the other hand, when the warranties co-exist, in which event a recovery may be founded upon either.").

Therefore, the Court denies Defendant's motion to dismiss this claim. [7]

      ii.  Express warranty

Defendant argues that Plaintiff has "failed to plead 'a specific affirmation of fact or promise that is false or misleading.'" Def. Br. at 20-21. "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach."[8] *Goldemberg*, 8 F. Supp. 3d at 482. Plaintiff has met their burden by alleging Defendant expressly warranted that the Product was nutritionally appropriate for children older than 12 months, despite containing added sugars contrary to health guidelines. Pl. Opp. at 19.

Further, despite Defendant's contentions, notice requirements for breaches of

---

[7] Privity is not at issue here as Plaintiff alleges she bought the Product. "There can be no warranty, express or implied, without privity of contract, since a warranty is an incident of a contract of sale. . . . Therefore, as to food or other merchandise, there are no implied warranties of merchantability or fitness except as to the buyer." *Greenberg v. Lorenz*, 9 N.Y.2d 195, 198 (N.Y. 1961) (citations omitted).

[8] Again, the Plaintiff's allegations support a finding of privity. "A buyer may bring a claim against a manufacturer from whom he did not purchase a product directly, since an express warranty 'may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies.'" *Goldemberg*, 8 F. Supp. at 482 (citing *Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.,* 51 A.D.3d 1114, 1116, 858 N.Y.S.2d 405 (3d Dep't 2008)); *see also Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399, 401, 404 (1962) ("dispens[ing] with the requirement of privity" for claims of "breach of express warranty by a remote purchaser against a manufacturer who induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods").

warranty have long been jettisoned in New York state. *Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000) (citing *Fischer v. Mead Johnson Labs.,* 41 A.D.2d 737, 737 (2d Dep't 1973)).

       iii.  Magnuson Moss Warranty Act

Plaintiff's Magnuson Moss claim must be dismissed, but not for reasons offered by Defendant. Def. Br. at n.5&6. Defendant argues that because Plaintiff's state warranty claims fail, so must her federal. However, Plaintiff has not failed to establish a state claim for breach of warranty.

Rather, the claim must fail because a claim is not "cognizable…if the amount in controversy of any individual claim is less than the sum or value of $25" or "if the action is brought as a class action, and the number of *named* plaintiffs is less than one hundred." 15 USC §2310(d)(3)(a-c) (emphasis added); *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 246 (2d Cir. 1986) (a case where fewer than 100 named plaintiffs have claims "would be a 'trivial or insignificant' action, and the federal forum should not be available" (citing House Report, *supra,* 1974 U.S.Code Cong. & Ad.News at 7724).). And, though a class action may be appropriate, the Complaint does not name 100 plaintiffs.

     **c.  Fraud**

Defendant argues that Plaintiff failed to allege, specific to the fraud claim, "scienter and intent to defraud." Def. Br. at 19. "Under New York law, a common

law fraud claim must plead the elements of fraud and satisfy Rule 9(b)'s heightened pleading standard." *See Matana v. Merkin*, 957 F. Supp. 2d 473, 484 (S.D.N.Y. 2013). As to the elements for fraud, a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley*, 797 F.3d at 170 (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009))." Rule 9(b) "requires that the plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 352–53 (S.D.N.Y. 2020) (citing *Eternity Glob. Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

The Rule allows "[m]alice, intent, knowledge, and other conditions of a person's mind" to be "alleged generally," though not on "speculation" or "conclusory allegations." Fed. R. Civ. P. 9(b). "[P]laintiff[] must allege facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (alteration in original) (quoting *Acito v. IMCERA Grp.*, 47 F.3d 47, 52 (2d Cir. 1995)). "Such a "strong inference" can be established either "(a) by alleging facts to show that defendants had both motive and opportunity to

commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* at 290–91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). To determine if the "strong inference" requirement is met, a court should "consider the complaint in its entirety and take into account plausible opposing inferences." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 177 (2d Cir. 2015) (internal quotation marks and citation omitted). If the inference is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged," then it is sufficiently strong. *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)).

Plaintiff has met this standard. As explained above, Plaintiff has already alleged deceptive conduct. Plaintiff also alleges that a change in market conditions led to declining sales of infant formula. In response, Defendant repurposed the unsold infant formula as the Product and increased advertising dollars for the Product. Compl. ¶¶9-12. Plaintiff also alleges a stark price difference between the Product and milk, alleging a financial incentive to defraud. *Id.* at ¶¶26-28. For these reasons, the Court denies Defendant's motion as to this claim.

### d. Negligent Misrepresentation

Defendant argues that Plaintiff's negligent misrepresentation claim must fail because there is no deception or privity. Def. Br. at 20. "To prevail on a claim of

20

negligent misrepresentation under New York law, a plaintiff must show '(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (citing *J.A.O. Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144, 148, 831 N.Y.S.2d 364, 366, 863 N.E.2d 585 (2007)). "[L]iability in the commercial context is 'imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Greene*, 262 F. Supp. 3d at 75 (citing *Eternity Glob.,* 375 F.3d at 187 (quoting *Kimmell v. Schaefer,* 89 N.Y.2d 257, 263 (1996))). As stated above, Plaintiff has plausibly alleged a claim for deception or misrepresentation.

Defendant alleges there is no privity or special relationship. Def. Br. at 20. "A relationship is considered so close as to approach that of privity if: (1) the defendant makes a statement with the awareness that the statement was to be used for a particular purpose; (2) a known party or parties rely on this statement in furtherance of that purpose; and (3) there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance. However, where the statement at issue is directed at a 'faceless or unresolved class or persons,' no duty of care arises." *Greene*, 262 F. Supp. 3d at 75 (internal citations omitted).

"When a plaintiff fails to allege the existence of a special relationship or the relationship is only 'sparsely pled,' the plaintiff must 'emphatically allege[ ] whether the person making the representation held or appeared to hold unique or special expertise' and 'whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Id.* (citing *Eternity Glob.*, 375 F.3d at 188 (first quoting *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) and then quoting *Kimmell*, 89 N.Y.2d at 264)."

Like in *Greene v. Gerber*, Plaintiff is part of a "faceless or unresolved class of persons," but has emphatically alleged the other factors. *Id.* at 75-76. Defendant "had unique expertise regarding the lack of scientific support for its representations" and "intended that…consumers would rely on those representations in making purchasing decisions." *Id.* at 76; Compl. at ¶96-98. Further, because determining a special relationship is a question of fact, these allegations are sufficient to overcome a motion to dismiss and be presented to a fact finder. *See Kimmell*, 89 N.Y.2d at 264 ("Whether the nature and caliber of the relationship between the parties is such that the injured party's reliance on a negligent misrepresentation is justified generally raises an issue of fact."). Therefore, the Court denies Defendant's motion to dismiss Plaintiff's claim for negligent misrepresentation.

### e. Unjust Enrichment

The Court denies Defendant's motion to dismiss Plaintiff's claim for unjust enrichment, as Plaintiff may plead in the alternative. *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 706 (2d Cir. 2020).

## CONCLUSION

For the foregoing reasons, Gerber's motion is DENIED in part, and GRANTED in part.

**SO ORDERED.**

           _/S/ Frederic Block_____
           FREDERIC BLOCK
           Senior United States District Judge

Brooklyn, New York
November 1, 2021